## HEXAFLURON LICENCE AGREEMENT

BETWEEN

<u>DUPHAR B.V.</u>, having a principal place of business at C.J. van Houtenlaan 36, 1381 CP Weesp, the Netherlands (hereinafter called DUPHAR)

of the one part

and

<u>THE DOW CHEMICAL COMPANY</u>, having a principal place of business at Midland, Michigan 48674, United States of America (hereinafter called DOW)

of the other part.

WHEREAS   DOW has developed the compound N-(((3,5-dichloro-4-(1,1,2,2-tetrafluoroethoxy)phenyl)amino)carbonyl)-2,6-difluorobenzamide (hereinafter called "hexafluron") and products containing said compound which are covered by DOW patents and patent applications in many countries; and

WHEREAS   DOW intends to manufacture and market or to have manufactured and marketed hexafluron and said products; and

WHEREAS   since the patent rights of DUPHAR could dominate in some countries the patent rights of DOW in respect of hexafluron, DOW desires to obtain a licence from DUPHAR to manufacture, have manufactured, use and sell hexafluron and said products under DUPHAR patents; and

WHEREAS   in consideration of payment of royalties as provided hereinafter, DUPHAR is willing to grant such licence.

NOW, THEREFORE, the parties agree as follows:

CROMPTON/UNIROYAL
MR. INGULLI DECLARATION
ENCLOSURE 1

Exhibit 3

- 2 -

I. Definitions

1.01 "DUPHAR Patents" shall mean the letters patent and applications for letters patent as listed in Schedule A and any extensions, divisions, and other applications or patents related to the patents and applications listed in Schedule A to the extent that the same are applicable to countries other than the U.S.A.

1.02 "Licensed Products" shall mean products containing hexafluron as the sole active ingredient and combinations containing hexafluron and other active ingredients in sofar the latter do not fall within the scope of any patent of DUPHAR.

1.03 "Territory" shall mean the (United Kingdom).

1.04 a) "Net Sales" to third parties shall mean the gross proceeds of all sales of hexafluron and of the Licensed Products by DOW to third parties in or outside the Territory less added value tax, rebates and discounts.

1.04 b) In the event of sales by DOW to Affiliated Companies "Net Sales" shall also mean the average gross proceeds per kilogram of sales inside or outside the Territory less the aforesaid deductions, provided the same price for hexafluron and the Licensed Products are charged by DOW to Affiliated Companies as to third parties which are not Affiliated Companies. If the price charged to Affiliated Companies is lower than the price charged to other third parties, the amount of Net Sales to the Affiliated Companies will be calculated on the basis of the price to other third parties. For the purpose of this Clause 1.04b) the term "Affiliated Companies" shall mean any companies controlled by or under common control with DOW wherein DOW owns, directly or indirectly, at least fifty (50%) of the voting interest of each such company.

Exhibit 3

- 3 -

1.05 "Term of this Agreement" shall mean the period of time beginning with the date of signature by both parties and ending on May 14, 1991 or until the earlier termination of this Agreement as provided in Clause V of this Agreement.

II. Licence - Non Attack

2.01 DUPHAR hereby grants for the Term of this Agreement to DOW and DOW hereby accepts a non-exclusive licence under the DUPHAR Patents to manufacture, have manufactured, use and sell hexafluron and/or Licensed Products in the Territory. The license granted under this clause shall not be sublicensable, except that DOW can sublicense Dow Chemical Company Limited, or any other DOW Affiliated Company in the United Kingdom to practice the license granted herein.

2.02 DUPHAR warrants that outside the Territory it will not assert DUPHAR Patents, insofar as included in the definition of DUPHAR Patents (with the express exception of DUPHAR Patents in the U.S.A.), towards DOW, DOW's sublicensee or their respective distributors/sellers and customers thereof to prevent the sale or use of hexafluron and/or the Licensed Products at any time prior to, on or subsequent to May 14, 1991.

III. Royalties and Notice

3.01 In consideration of the rights and licenses granted to and used by DOW under this Agreement, DOW shall pay DUPHAR royalties equal to one percent (1%) of Net Sales (as defined in Clause 1.04) of hexafluron manufactured in the Territory and of Licensed Products containing such hexafluron.

With respect to combination products (as defined in Clause 1.02 hereof) sold in any particular country, the royalty shall be

Exhibit 3

- 4 -

one percent (1%) of estimated Net Sales value of the hexafluron used in the combination products, said estimated Net Sales value to be calculated based on a mutually acceptable formula for said country. For a combination product sold to Egypt, the amount of the royalty shall be determined by the following formula:

$$\text{Royalty} = 1\% \times Y \times \frac{30}{H} \times Q$$

wherein
Y represents the average price per kilogram (for the two years previous to the year in which the combination product is sold in Egypt), in Dutch Guilders, of Diflubenzuron sold to DOW for use in Egypt;
H represents the grams of hexafluron per liter of combination product; and
Q represents the total quantity of hexafluron, in kilograms, used in the combination product sold to Egypt during the period for which royalties are due.

3.02 Royalties will be due on Net Sales made prior to and on May 14, 1991. Provided that DOW meets its royalty obligations through May 14, 1991, the license granted hereunder shall be deemed fully paid and DOW shall have no further obligations to DUPHAR with respect to the manufacture, use or sale of hexafluron, inside or outside of the Territory (except for the U.S.A.).

3.03 Within sixty (60) days after the end of each calendar half-year of each year during the term of this Agreement DOW will submit to DUPHAR in duplicate a statement in writing indicating the quantities of hexafluron and of the Licensed Products sold and liable to royalty payment under Clause 3.01, such statement to show total Net Sales for the reporting period on which

Exhibit 3

- 5 -

royalties are payable and a calculation of the royalties payable for said period.

3.04 Subject to the provision of Clause 3.05 DOW shall at the same time pay to DUPHAR in the Netherlands in Dutch Guilders the royalty amount due, it being agreed that the Net Sales value received by DOW in currencies other than the Dutch Guilder will be converted according to the official rate of exchange of the Nederlandsche Bank, Frederiksplein, Amsterdam, The Netherlands, between the relevant currency and the Dutch Guilder valid on the last working day of the calendar half-year to which the relative royalty payment relates.

3.05 DOW shall withhold from the royalty amounts due to DUPHAR all taxes, if any, required to be withheld therefrom according to Laws or Regulations in the Territory and DOW shall pay said taxes in the name and on behalf of DUPHAR with tax receipts for such tax payments.

3.06 DOW shall keep accurate and complete records of all its operations relating to sales of hexafluron and of the Licensed Products liable to royalty payments under Clause 3.01, all in accordance with generally accepted accounting principles and practices. Such records shall be open during the usual business hours for inspection by an independent certified public accountant selected by DUPHAR and reasonably acceptable for DOW who shall have the right to examine such records at the expense of DUPHAR for the sole purpose of verifying the accuracy of any royalty payments due hereunder.

3.07 The addresses of the parties shall be as follows:
   a) for DUPHAR all notices and communications, including royalty reports and royalty payments, shall be sent to:

Exhibit 3

DUPHAR B.V.
C.J. van Houtenlaan 36
1381 CP  Weesp
The Netherlands
Attn: Dr. W. Maas
      Vice-President
      General Manager, Crop Protection Division

b) for DOW all notices and communications shall be sent to:

The Dow Chemical Company
Agricultural Products
9008 Building
Midland, Michigan 48674
U.S.A.
Attn: Mr. T.J. Brownlie
      Business Development Manager

c) Notices and written communications shall be considered to have been given on the date of delivery by hand or on the date of mailing thereof, postage paid, by airmail, to the party entitled thereto at its above address or at such other address as indicated to the other party in writing.

IV. Assignment

4.01 DUPHAR is entitled and obliged to assign its rights and obligations under this Agreement to the successor of its Crop Protection activities but DUPHAR warrants that any such assignee shall honor its obligations under this Agreement.

4.02 DOW is not entitled to assign the rights and obligations hereunder to any other firm, person or company without DUPHAR's prior written consent.

Exhibit 3

- 7 -

Notwithstanding the above, DOW is entitled to aforesaid assignment to the successor of its Crop Protection business subject however to the provision of Clause 5.02 hereinafter.

V.  Termination

5.01 Either party shall have the right to terminate this Agreement upon ninety (90) days' notice in writing in the event of the other party committing or permitting any serious breach of any of the terms of this Agreement.

However, before exercising such right the offending party will be given an opportunity to discuss the situation and to remedy any deficiencies which would be a justified cause for cancellation.

5.02 In the event that DUPHAR can reasonably demonstrate that change in the ownership of the Crop Protection business of DOW (whether by sale of stock or assets) is for sound reasons unacceptable for DUPHAR or for its Belgian parent company, DUPHAR is entitled to terminate this Agreement forthwith by notice in writing within sixty (60) days after it receives written notice of such change of ownership.

5.03 The termination of this Agreement shall not relieve the parties hereto from performing any obligations accrued until the date this Agreement terminates.

VI. Law and Venue

In case of any dispute arising out of this Agreement the Courts and Laws of the domicile of the party sued shall be competent, however, the parties agree so far as possible to use every reasonable effort to settle any dispute or disagreement between them relative to the

Exhibit 3

- 8 -

Agreement by amicable means and if necessary utilize the assistance of an independent party acceptable to both sides and not to resort to legal action unless and until the parties have in good faith attempted to settle such dispute or disagreement in the foregoing manner.

## VII. Partial Validity, Adaptation

In the event any provision of this Agreement should be held invalid, the parties undertake to use reasonable efforts in order to achieve that such provision is modified in mutual agreement in accordance with the spirit and intent of this Agreement, so that same becomes valid again and the remaining part of the Agreement shall not be affected thereby.

## VIII. Entire Agreement, Amendments

This Agreement constitutes the entire agreement between the parties on the subject matter hereof and all prior negotiations, agreements and understandings are expressly cancelled hereby.
No amendment hereof or addition hereto shall be effective unless in writing duly executed by each of the parties hereto.

IN WITNESS WHEREOF the parties hereto have duly executed this Agreement in duplicate in the manner legally binding upon them.

DUPHAR B.V.

By _____

Name _____

Title _____

Date _____

THE DOW CHEMICAL COMPANY

By _____

Name  John J. Hagaman

Title  President, Global
       Agricultural Products

Date   April 4, 1988

RZ/BS/0460S

Exhibit 3

SCHEDULE A
to
HEXAFLURON LICENSE AGREEMENT
between
DUPHAR B.V. and THE DOW CHEMICAL COMPANY

The "Duphar Patents" referred to in Clause 1.01 of the above License Agreement are listed below:

I. A) Duphar Patents outside the U.S.A.

| Country | Patent No. | Issue date | Expiration date |
|---|---|---|---|
| Austria | 309894 | Apr. 15, 1973 | Dec. 15, 1990 |
| Belgium | 767161 | Nov. 16, 1971 | May 13, 1991 |
| Canada | 921470 | Feb. 20, 1973 | Feb. 20, 1990 |
| Denmark | 132753 | July 5, 1976 | May 12, 1991 |
| Egypt | 10789 | June 30, 1976 | Extension pending |
| France | 2091640 | Dec. 20, 1971 | May 14, 1991 |
| Iran | 9842 | Nov. 16, 1971 | Nov. 9, 1991 |
| Israel | 36833 | Oct. 29, 1975 | Apr. 12, 1991 |
| Italy | 926742 | Aug. 17, 1972 | May 12, 1991 |
| Japan | 891626 | Dec. 24, 1977 | May 13, 1991 |
| Japan | 959487 | June 28, 1979 | May 13, 1991 |
| Japan | 967023 | July 26, 1979 | May 13, 1991 |
| Netherlands | 160809 | Nov. 17, 1979 | May 15, 1990 |
| New Zealand | 163634 | May 22, 1975 | Extension pending |
| Spain | 391147 | Jan. 11, 1974 | Jan. 11, 1994 |
| Spain | 418579 | March 1, 1976 | March 1, 1996 |
| Sweden | 7106184-0 | Sept. 16, 1976 | May 12, 1991 |
| Switzerland | 597166 | Oct. 31, 1977 | May 12, 1991 |
| Switzerland | 602609 | Dec. 31, 1977 | May 12, 1991 |
| Switzerland | 596758 | Oct. 31, 1977 | May 12, 1991 |
| U.K. | 132493 | Nov. 21, 1973 | May 14, 1991 |

B) Applications for Letters Patents:

| Country | Patent No. | | Expiration date |
|---|---|---|---|
| Germany | P2167112.5 | (application no.) | May 11, 1989 |
| Germany | P2167113.6 | ( "    "  "  "    " ) | May 11, 1989 |
| Netherlands | 7105350 | ( "    "  "  "    " ) | Apr. 30, 1991 |

II. Duphar Patents in the U.S.A. are the following:

| Patent No. | Issue date | Expiration date |
|---|---|---|
| 3748356 | July 24, 1973 | July 24, 1990 |
| 3933908 | Jan. 20, 1976 | Jan. 20, 1993 |
| 3989842 | Nov. 2, 1976 | Nov. 2, 1993 |
| 4013717 | March 22, 1977 | March 22, 1994 |
| 4110469 | Aug. 29, 1978 | Aug. 29, 1995 |
| 4166124 | Aug. 28, 1979 | Aug. 28, 1996 |
| 4607044 | Aug. 19, 1986 | Aug. 19, 2003 |

Exhibit 3